UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PANG YANG, | ) | 1:07-cv-01099-AWI-SMS |
| | ) | |
|           Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS RE: |
|   v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 2) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
|          Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for benefits. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72-302(c)(15). Pending before the Court are the parties' briefs, which have been submitted without oral argument.

I. <u>Procedural History</u>

Plaintiff's previous two applications for Supplemental Security Income (SSI) benefits were decided unfavorably in September 2001 and November 2003. (A.R. 304-15, 860-76; 597-600, 877-900.)

1

1    On April 5, 2004, Plaintiff, born February 5, 1963, filed an
2 application for Supplemental Security Income (SSI), alleging
3 disability due to major depression, inability to sleep or
4 concentrate, back pain, asthma, diabetes, high blood pressure,
5 ulcer, and headaches since January 10, 1989. (A.R. 647-50, 654,
6 607.) After Plaintiff's claim was denied initially and on
7 reconsideration, Plaintiff appeared with counsel and testified at
8 a hearing held before the Honorable Patricia Leary Flierl,
9 Administrative Law Judge (ALJ) of the Social Security
10 Administration (SSA), on May 10, 2006. (A.R. 607-20, 21.) On
11 January 18, 2007, the ALJ denied Plaintiff's application for
12 benefits. (Id. at 21-26.) After the Appeals Council denied
13 Plaintiff's request for review on June 1, 2007, Plaintiff filed
14 the complaint in this action on July 27, 2007. (Id. at 11-13.)
15 Briefing commenced on May 27, 2008, and was completed on June 27,
16 2008, with the filing of Defendant's opposition.

17    II. <u>Scope and Standard of Review</u>

18    Congress has provided a limited scope of judicial review of
19 the Commissioner's decision to deny benefits under the Act. In
20 reviewing findings of fact with respect to such determinations,
21 the Court must determine whether the decision of the Commissioner
22 is supported by substantial evidence. 42 U.S.C. § 405(g).
23 Substantial evidence means "more than a mere scintilla,"
24 <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a
25 preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10
26 (9th Cir. 1975). It is "such relevant evidence as a reasonable
27 mind might accept as adequate to support a conclusion."
28 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record

2

1  as a whole, weighing both the evidence that supports and the

2  evidence that detracts from the Commissioner's conclusion; it may

3  not simply isolate a portion of evidence that supports the

4  decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.

5  2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).

6  It is immaterial that the evidence would support a finding

7  contrary to that reached by the Commissioner; the determination

8  of the Commissioner as to a factual matter will stand if

9  supported by substantial evidence because it is the

10 Commissioner's job, and not the Court's, to resolve conflicts in

11 the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th

12 Cir. 1975).

13      In weighing the evidence and making findings, the

14 Commissioner must apply the proper legal standards. <u>Burkhart v.</u>

15 <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

16 review the whole record and uphold the Commissioner's

17 determination that the claimant is not disabled if the

18 Commissioner applied the proper legal standards, and if the

19 Commissioner's findings are supported by substantial evidence.

20 <u>See,</u> <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d

21 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If

22 the Court concludes that the ALJ did not use the proper legal

23 standard, the matter will be remanded to permit application of

24 the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th

25 Cir. 1987).

26      III. <u>Disability</u>

27      In order to qualify for benefits, a claimant must establish

28 that she is unable to engage in substantial gainful activity due

1  to a medically determinable physical or mental impairment which
2  has lasted or can be expected to last for a continuous period of
3  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
4  claimant must demonstrate a physical or mental impairment of such
5  severity that the claimant is not only unable to do the
6  claimant's previous work, but cannot, considering age, education,
7  and work experience, engage in any other kind of substantial
8  gainful work which exists in the national economy. 42 U.S.C.
9  1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
10 Cir. 1989). The burden of establishing a disability is initially
11 on the claimant, who must prove that the claimant is unable to
12 return to his or her former type of work; the burden then shifts
13 to the Commissioner to identify other jobs that the claimant is
14 capable of performing considering the claimant's residual
15 functional capacity, as well as her age, education and last
16 fifteen years of work experience. Terry v. Sullivan, 903 F.2d
17 1273, 1275 (9th Cir. 1990).

18     The regulations provide that the ALJ must make specific
19 sequential determinations in the process of evaluating a
20 disability: 1) whether the applicant engaged in substantial
21 gainful activity since the alleged date of the onset of the
22 impairment, 2) whether solely on the basis of the medical
23 evidence the claimed impairment is severe, that is, of a
24 magnitude sufficient to limit significantly the individual's
25 physical or mental ability to do basic work activities; 3)
26 whether solely on the basis of medical evidence the impairment
27 equals or exceeds in severity certain impairments described in
28 Appendix I of the regulations; 4) whether the applicant has

4

1  sufficient residual functional capacity, defined as what an
2  individual can still do despite limitations, to perform the
3  applicant's past work; and 5) whether on the basis of the
4  applicant's age, education, work experience, and residual
5  functional capacity, the applicant can perform any other gainful
6  and substantial work within the economy. See 20 C.F.R. § 416.920.

7       Here, in the previous proceedings, it was determined that
8  Plaintiff had the RFC to perform work at all exertional levels
9  involving simple, repetitive tasks, and she was thus not
10 disabled.

11      Thus, with respect to the proceeding under review, the
12 unadjudicated period was from November 19, 2003, to the date of
13 decision.

14      The ALJ in the proceeding under review concluded that
15 Plaintiff had severe impairments of a depressive disorder, post-
16 traumatic stress disorder, and asthma, which did not meet or
17 medically equal a listed impairment. Plaintiff had the residual
18 functional capacity (RFC) to perform work at all exertional
19 levels involving simple, repetitive tasks but no exposure to
20 pulmonary irritants. Plaintiff had no past relevant work, and
21 considering her age, education, work experience, and RFC, there
22 were jobs that existed in significant numbers in the national
23 economy that the claimant could perform.

24      IV. Opinions of Treating Physicians

25      Plaintiff argues that the record lacks substantial evidence
26 to support the ALJ's conclusion that Plaintiff could complete
27 simple, repetitive tasks. Specifically, Plaintiff argues that the
28 ALJ failed to give specific, legitimate reasons for his rejection

1 of the opinions of treating doctors Fang and Parayno.

2 The standards for evaluating treating source's opinions are

3 as follows:

> By rule, the Social Security Administration favors
> the opinion of a treating physician over
> non-treating physicians. See 20 C.F.R. § 404.1527.
> If a treating physician's opinion is
> "well-supported by medically acceptable clinical
> and laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence
> in [the] case record, [it will be given]
> controlling weight." Id. § 404.1527(d)(2). If a
> treating physician's opinion is not given
> "controlling weight" because it is not
> "well-supported" or because it is inconsistent
> with other substantial evidence in the record, the
> Administration considers specified factors in
> determining the weight it will be given. Those
> factors include the "[l]ength of the treatment
> relationship and the frequency of examination" by
> the treating physician; and the "nature and extent
> of the treatment relationship" between the patient
> and the treating physician. Id. §
> 404.1527(d)(2)(i)-(ii). Generally, the opinions of
> examining physicians are afforded more weight than
> those of non-examining physicians, and the
> opinions of examining non-treating physicians are
> afforded less weight than those of treating
> physicians. Id. § 404.1527(d)(1)-(2). Additional
> factors relevant to evaluating any medical
> opinion, not limited to the opinion of the
> treating physician, include the amount of relevant
> evidence that supports the opinion and the quality
> of the explanation provided; the consistency of
> the medical opinion with the record as a whole;
> the specialty of the physician providing the
> opinion; and "[o]ther factors" such as the degree
> of understanding a physician has of the
> Administration's "disability programs and their
> evidentiary requirements" and the degree of his or
> her familiarity with other information in the case
> record. Id. § 404.1527(d)(3)-(6).

24 Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

25 With respect to proceedings under Title XVI, the Court notes

26 that an identical regulation has been promulgated. See, 20 C.F.R.

27 § 416.927.

28 As to the legal sufficiency of the ALJ's reasoning, the

governing principles have been recently restated:

> The opinions of treating doctors should be given more
> weight than the opinions of doctors who do not treat
> the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
> Cir.1995) (as amended).] Where the treating doctor's
> opinion is not contradicted by another doctor, it may
> be rejected only for "clear and convincing" reasons
> supported by substantial evidence in the record. Id.
> (internal quotation marks omitted). Even if the
> treating doctor's opinion is contradicted by another
> doctor, the ALJ may not reject this opinion without
> providing "specific and legitimate reasons" supported
> by substantial evidence in the record. Id. at 830,
> quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
> Cir.1983). This can be done by setting out a detailed
> and thorough summary of the facts and conflicting
> clinical evidence, stating his interpretation thereof,
> and making findings. Magallanes [v. Bowen, 881 F.2d
> 747, 751 (9th Cir.1989).] The ALJ must do more than
> offer his conclusions. He must set forth his own
> interpretations and explain why they, rather than the
> doctors', are correct. Embrey v. Bowen, 849 F.2d 418,
> 421-22 (9th Cir.1988).
> Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
> accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
> 830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

### A. Dr. Parayno

In the present case, the ALJ summarized the new medical evidence presented at the hearing. The ALJ noted treatment records from the Fresno County Mental Health Department dating from November 2003 through July 2005, when Plaintiff saw Dr. Mouanoutoua and Dr. Parayno and was treated with counseling and medication. (A.R. 24-25.) Dr. Parayno reported that Plaintiff had been treated at the center since October 2001.

The ALJ expressly noted Dr. Parayno's opinion of March 2004 that Plaintiff would have difficulty comprehending simple instructions due to her poor attention; completing even simple, repetitive tasks; and meeting a work attendance schedule. However, Dr. Parayno reported that Plaintiff was able to interact

with the public and with coworkers, and she could communicate effectively but not in English. (A.R. 707.)

The ALJ mentioned several factors, which are all supported by substantial evidence in the record, that contradicted the severity of the limitations attributed to Plaintiff by Dr. Parayno.

The ALJ stated that Dr. Parayno's clinical notes reflected that Plaintiff's mental condition was stable on her medication. (A.R. 25.) The notes generally reflect that over the years, Plaintiff complained of headaches, sadness, hopelessness, anger, fatigue, difficulty with memory and sleeping, distress, and lack of interest in daily activities. (A.R. 706, 711, 714, 716-17, 811, 820, 840.) However, the objective medical record of findings upon examination reflected relatively minor symptoms and signs, including good orientation, calm and cooperative manner, normal speech, focused and coherent thought despite preoccupation with pain and medical problems, and good or fair memory, insight, and judgment. (A.R. 710-11 [February 2004]; 817 [September 2004]; 840 [January 2005].) Indeed, the record reflected improvement from moderate sleep (A.R. 815 [January 2005]) to fair and better appetite and sleep due to medication (A.R. 813, 838 [March 2005]). Plaintiff also reported progress in the form of learning to occupy her mind to avoid anger (A.R. 811 [April 2005]); achieving increased focus on chores, such as daily cooking; increasing success at coping with depression at home with the family's support and medications; and an emerging desire to work (A.R. 810 [May 2005]). Plaintiff affirmatively reported that her medications helped her symptoms. (A.R. 831, 833 [July 2005], 828

[September 2005], 826 [October 2005], 852 [February 2006 report that medications helped control her psychological symptoms and allowed Plaintiff to sleep and function].)

The ALJ stated that although Plaintiff complained of war flashbacks and nightmares, she did light chores and babysat and further said that her mental problems derived from her medical condition. (A.R. 25.) The record confirms that Plaintiff generally reported that she performed light chores. (A.R. 706 [cooked noodles in March 2004], 705 [did a few simple chores in April 2004], 818 [cooked rice, shopped with the children in July 2004], 816 [light chores and babysitting December 2004], 815 [helped cook three times a week in January 2005], 813 [cooked a daily meal four days a week in March 2005], 812 [cooked and performed simple chores for the family in March 2005], 811 [cooked a meal for the family daily and performed simple chores in April 2005; but see 852, 857 [reports in February and August 2006 to Drs. Fang and Michiel respectively that Plaintiff cooked only in the microwave and made sandwiches due to poor memory, and only cooked once a week].) Further, Plaintiff did report that her mental impairment was based on her medical condition; in March 2004 she reported that her worsening diabetes and increased stress were causing increased distress and sadness. (A.R. 708; see also A.R. 810 [continuing health concerns fueled her depression in May 2005].)

The ALJ also stated that a clinical note dated June 30, 2005, reported that staff had been unable to contact Plaintiff for a month; on July 29, 2005, Plaintiff reiterated that she felt fine and did not have time to continue services; she requested

1   that her case be closed. (A.R. 25.) The record reflects that

2   Plaintiff reported that she was keeping busy with household tasks

3   and interaction with her children and felt that she could cope

4   with her depression at home in May 2005; she wanted to work.

5   (A.R. 810.) In June 2005, staff at the clinic was unable to

6   contact Plaintiff despite trying to reach her at home several

7   times. (A.R. 809.) In July 2005, Plaintiff reported that she had

8   no time to visit the staff, felt fine, agreed to a discharge

9   plan, and wanted her case closed. (A.R. 808.)

10      The ALJ stated that in May 2005, Plaintiff indicated that

11  she wanted to work in a laundry or as a janitor or housekeeper.

12  (A.R. 25.) The record reveals that in May 2005, Plaintiff said

13  that she was working with a Cal-Work worker to find a job that

14  she could do; she wanted to work in a laundry or as a janitor or

15  housekeeper, and she felt fine and had no mental problems. (A.R.

16  810.)

17      Thus, the record contained substantial evidence to support

18  the reasons given by the ALJ concerning the weight to be given to

19  the opinion of Dr. Parayno.

20          B. Dr. Fang

21      On February 12, 2006, Plaintiff was evaluated by Ko Fang,

22  Ph.D., at Plaintiff's request. (A.R. 849-55.) Dr. Fang performed

23  a clinical interview, mini-mental status exam, review of the

24  medical record, a test of nonverbal intelligence-3 (TONI-3), and

25  the Beck Depression Inventory (BDI). It was necessary for

26  Plaintiff's husband to provide much of the history to Dr. Fang.

27  Plaintiff reported that she was so depressed and fearful that she

28  would not survive her hypertension and diabetes that she was

10

1  unable to perform daily activities. Dr. Fang observed that

2  Plaintiff had confused and disorganized thoughts, exhibited poor

3  insight and judgment, presented with a psychomotor retardation

4  with slow movement and delayed response, and was tearful and sad.

5  Plaintiff's score on the TONI-3 placed Plaintiff in the first

6  percentile of the people of her age, indicating that Plaintiff

7  was performing in the very poor range of mental ability and was

8  developmentally equivalent to a seven-year-old child. Plaintiff's

9  score on the BDI suggested that she was severely depressed. Dr.

10  Fang's diagnosis was major depressive disorder, severe, without

11  psychotic features, and post traumatic stress disorder.

12  Plaintiff's GAF was 47.[1] Dr. Fang opined that Plaintiff had

13  impaired short-term and long-term memory, problems learning new

14  skills, and markedly impaired concentration and cognitive

15  functioning. Dr. Fang did not otherwise evaluate Plaintiff's

16  capacity for performing work activities. Further, the record does

17  not reflect that Dr. Fang ever saw, evaluated, or treated

18  Plaintiff again.

19      The ALJ stated that Plaintiff had informed Dr. Fang that she

20  had never been to any school for any reason and could not write

21  or read in Hmong. (A.R. 25.) The ALJ further noted that Plaintiff

22  admitted to Dr. Michiel that she had attended English classes.

23

24      [1] A GAF, or global assessment of functioning, is a report of a
clinician's judgment of the individual's overall level of functioning that is
25  used to plan treatment and to measure the impact of treatment as well as to
predict its outcome. American Psychiatric Association, Diagnostic and
26  Statistical Manual of Mental Disorders at 32 (4th ed., text revision) (DSM-IV-
TR). A GAF of 47 (i.e., in the range of 41-50) indicates serious symptoms
27  (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or
any serious impairment in social, occupational, or school functioning (e.g.,
28  no friends, unable to keep a job). DSM-IV-TR at 34.

(A.R. 25.) The record reflects that Dr. Fang was informed that Plaintiff had no schooling in Laos because no education existed in Laos or in a Thai refugee camp in which Plaintiff stayed for about a year; further, Plaintiff had no formal education in the United States and because of her children had not been able to attend school or acquire marketable skills. Plaintiff was limited in the English language. (A.R. 851, 853.) The record further reflects that Plaintiff also told Dr. Parayno specifically that she did not read or write, even in Hmong; Dr. Parayno concluded that she would have difficulty completing educational programs or following and comprehending even simple instructions due to poor attention. (A.R. 707.) However, the record also indicates that Plaintiff reported to Dr. Michiel that she had attended classes in English as a second language. (A.R. 856.)

The ALJ noted Plaintiff's visit to Dr. Ekram Michiel, a psychiatrist, for a consultative psychiatric examination on August 25, 2006. Dr. Michiel took a history from the Plaintiff with the aid of an interpreter; Dr. Michiel concluded that Plaintiff was a fairly good historian. He also reviewed medical records and performed a mental status exam. Plaintiff reported that she was depressed because of her diabetes, high blood pressure, back pain, and headaches. When she was sad, she did not sleep. Plaintiff's speech and general body movements were normal; she was oriented and could recall three out of three objects at one and five minutes. Plaintiff's thought process was goal-directed. Dr. Michiel diagnosed depressive disorder, not

otherwise specified; Plaintiff's GAF was 60 to 65.[2] Plaintiff was able to maintain attention and concentration and to carry out one-step or two-step simple job instructions, and relate and interact with coworkers, supervisors, and the general public. However, she was unable to carry out technical and/or complex instructions, and she was unable to handle her own funds because of her unfamiliarity with United States currency.

The ALJ noted, and the record reflects, that Plaintiff testified that she first obtained a driver's license in 1993 by taking a written exam in Hmong and a driving test; she renewed the license in January 2006. (A.R. 25, 905-06.) Plaintiff also admitted that when she came to the United States, on one day a week for two months, she studied reading and writing Hmong at a children's school; as a teenager, she also went to high school five days a week for two years in Santa Ana to learn English, which she learned, but she did not pass the course or know how to read and write in English. Plaintiff stopped school when she married her husband. She knew and read Hmong a little bit. (A.R. 25, 905-08.)

Plaintiff testified that she drove a car rarely and shopped, but she could not do any chores at home except cooking noodles; she spent her entire day lying down because she lacked energy and could not concentrate and remember things; she had pain. (A.R. 909, 913-14, 916.) She could walk for fifteen minutes before

---

[2] A GAF of 65 (i.e., between 61 and 70) indicates a person with some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but who is generally functioning pretty well and with some meaningful interpersonal relationships. DSM-TR at 34.

having to rest, stand fifteen minutes, sit thirty minutes, and lift a half gallon of milk. (A.R. 916.)

On December 7, 2004, state agency medical consultant Dr. Archimedes Garcia, a psychiatrist, opined that due to her affective disorder, with respect to severity, Plaintiff had mild limitations of her activities of daily living and of maintaining social functioning, concentration, persistence, or pace. Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions but was not otherwise significantly limited. (A.R. 744-63.) Chavez[3] applied, and Plaintiff was capable of simple, repetitive tasks for two-hour intervals, finishing a normal workday, maintaining regular attendance, and interacting with coworkers or the general public; she would not need special supervision and would not have difficulty adapting to usual work. (Id. at 761.) State agency medical consultants Ernest Wong, M.D., and Dr. James V. Glasier, M.D., opined in July and December 2004, respectively, that Chavez applied, and in light of her low back pain, diabetes, and hypertension, Plaintiff could perform work at all exertional levels if she avoided concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (A.R. 664-72.)

The ALJ stated:

I have given little weight to Dr. Fang's opinion and Dr. Parayno's March 2004 statement, because they are refuted by the mental health records discussed above, Dr. Michiel's opinion, and the claimant's own statements and testimony. The claimant has understated her ability to communicate in her own language, her education, and her activities of daily living.

---

[3] The reference is to Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988).

1
2    The state agency medical consultants concluded that
     the claimant can perform unskilled work at all exertional
3    levels not involving pulmonary irritants (citation
     omitted).

4    (A.R. 25.)

5         With respect to the ALJ's weighing of the opinions of

6    treating physicians Parayno and Fang, as the previous recitation

7    of facts has shown, the record contained substantial evidence to

8    support the reasons stated by the ALJ.

9         Further, the ALJ's reasons were legally sufficient because

10   they were specific and legitimate. It is established that the

11   opinion of a treating physician may be rejected if it is

12   ambiguous and inconsistent or conclusionary in form and not

13   supported by clinical findings or relevant medical documentation.

14   Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992);

15   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Johnson v.

16   Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). It is appropriate

17   for an ALJ to consider the absence of supporting findings, and

18   the inconsistency of conclusions with the physician's own

19   findings, in rejecting a physician's opinion. Johnson v. Shalala,

20   60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981

21   F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d

22   747, 751 (9th Cir. 1989). It is permissible to rely on the

23   Plaintiff's testimony regarding her impairments in discrediting a

24   treating physician's opinion. Fisher v. Schweiker, 568 F.Supp.

25   900, 903 (N.D.Cal. 1983). Plaintiff's activities of daily living

26   have been used as a basis for rejecting the opinion of a treating

27   physician. See, Nguyen v. Commissioner of Social Security, 2008

28   WL 859425, *8 (E.D.CA March 28, 2008). Further, it is established

                                  15

1  that even where an expert's report identifies characteristics

2  that might limit a claimant's ability to perform work on a

3  sustained basis, if the report fails to explain how such

4  characteristics preclude work activity in the claimant's case, it

5  is appropriate and adequate for an ALJ to 1) determine that the

6  level of impairment stated is unreasonable in light of the

7  symptoms and other evidence in the record, and 2) set forth that

8  analysis. See Morgan v. Commissioner of Social Security 169 F.3d

9  595, 601 (9th Cir. 1999).

10      Here, the ALJ reviewed the medical evidence of record and

11  concluded that the treating physicians' opinions were not well-

12  supported by medically acceptable clinical and laboratory

13  diagnostic techniques, and their opinions were inconsistent with

14  other substantial evidence in the case record. The ALJ reasonably

15  relied on the objective medical evidence, Plaintiff's

16  inconsistent activities of daily living, the inconsistency

17  between the history of Plaintiff's education given to Plaintiff's

18  treating doctors and that which was reported to the consulting

19  examiner, and Plaintiff's own assertions that she was not ill and

20  did not need treatment, accompanied by her own decision to cease

21  treatment for her mental impairment. Further, the ALJ

22  appropriately noted that Dr. Fang's functional assessment was

23  largely stated in terms of symptoms, as distinct from a more

24  customary assessment of the ability to perform work.

25      The Court rejects Plaintiff's contention that the tests used

26  by Dr. Fang produced the only test results entitled to credence

27  because those tests could not be confounded by language and motor

28  impairments arising from conditions such as lack of proficiency

1  with spoken or written English and lack of familiarity with the

2  culture of the United States. The ALJ determined that Plaintiff

3  understated important information upon which Dr. Fang apparently

4  based the opinion, including her education, her ability to

5  communicate in her own language, and her activities of daily

6  living. Further, the Court notes that a Hmong interpreter was

7  employed in Plaintiff's examination by Dr. Michiel. (A.R. 856.)

8       The Court's conclusion concerning the sufficiency of the

9  ALJ's reasoning also answers Plaintiff's contention that the ALJ

10 erred in concluding that Plaintiff failed to produce new and

11 material evidence of a more severe mental impairment. Although

12 Plaintiff contends that the opinion of Dr. Ko Fang constituted

13 new and material evidence, the ALJ considered Dr. Fang's opinion

14 and stated specific and legitimate reasons, supported by

15 substantial evidence, for discounting the opinion and determining

16 that Plaintiff's mental impairment had not been shown to be more

17 severe than at the time of the previous adjudication. Where

18 evidence is susceptible to more than one rational interpretation,

19 it is the ALJ's conclusion that must be upheld. <u>Burch v.</u>

20 <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

21      V. <u>Simple Repetitive Tasks</u>

22      Plaintiff argues that the ALJ's conclusion that Plaintiff

23 could perform simple, repetitive tasks (SRT) was not supported by

24 substantial evidence in the record. However, the finding that

25 Plaintiff could perform SRT is supported by the opinion of Dr.

26 Michiel, who assessed a GAF of 60 to 65, and thus found that

27 Plaintiff had only mild symptoms, was generally functioning

28 pretty well, and had some meaningful relationships. Further, Dr.

17

1 Michiel expressly concluded that Plaintiff could carry out one-
2 step or two-step, simple job instructions.

3      With respect to the ALJ's reliance on the opinion of the
4 consulting, examining psychiatrist, the medical opinion of a
5 nontreating doctor may be relied upon instead of that of a
6 treating physician if the ALJ provides specific and legitimate
7 reasons supported by substantial evidence in the record. Holohan
8 v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester
9 v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory
10 opinion of a nontreating but examining physician constitutes
11 substantial evidence, and may be relied upon instead of that of a
12 treating physician, where it is based on independent clinical
13 findings that differ from those of the treating physician.
14 Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, Dr.
15 Michiel's conclusion was supported by his own, independent
16 findings.

17      VI. Vocational Evidence

18      Plaintiff argues that at step five, the ALJ erred in failing
19 to obtain the testimony of a vocational expert to testify as to
20 what jobs were currently available to plaintiff in light of her
21 non-exertional impairments.

22      The ALJ applied Chavez v. Bowen, 844 F.2d 691 (9th Cir.
23 1988). She concluded that Plaintiff had the RFC to perform work
24 at all exertional levels involving simple, repetitive tasks but
25 no exposure to pulmonary irritants. (A.R. 24.) Plaintiff had no
26 past relevant work.

27      Once a claimant proves she cannot return to her former work,
28 the Secretary must show that there are jobs in the national

1  economy that the claimant can perform. <u>Jones v. Heckler</u>, 760 F.2d
2  993, 998 (9th Cir.1985). The guidelines may only be applied when
3  they accurately reflect a claimant's limitations. <u>Desrosiers v.</u>
4  <u>Secretary of Health & Human Services</u>, 846 F.2d 573, 576-77 (9th
5  Cir. 1988). If a nonexertional limitation significantly limits
6  the range of work one can perform, mechanical application of the
7  grids is inappropriate, and a vocational expert (VE) is required.
8  <u>Tackett v. Apfel</u>, 180 F.3d 1194, 1102 (9th Cir. 1999). Absent
9  other reliable evidence of an applicant's ability to perform
10 specific jobs, the Secretary must use a vocational expert.
11 <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir.1985). However,
12 where nonexertional limitations are found not to significantly
13 limit a claimant's exertional capacity, then use of the grids is
14 appropriate. <u>Razey v. Heckler</u>, 785 F.2d 1426, 1430 (9th Cir.
15 1986), <u>as amended</u>, 794 F.2d 1348 (where substantial evidence
16 supported the agency's conclusion that the claimant's generalized
17 anxiety disorder did not prevent him from engaging in the work
18 that he was physically able to do, use of the grids was
19 appropriate); <u>Odle v. Heckler</u>, 707 F.2d 439, 440 (9th Cir.1983)
20 (where substantial evidence supported the finding that the
21 claimant's non-exertional impairments of deafness, dizziness, and
22 drug dependence did not significantly limit his exertional
23 capacities, use of the grids was appropriate, and no finding as
24 to specific jobs was required).

25     Here, the ALJ concluded that Plaintiff's ability to work at
26 all exertional levels had been compromised by nonexertional
27 limitations; however, the limitations had little or no effect on
28 the occupational base of unskilled work at all exertional levels.

1  (A.R. 26.) The ALJ thus concluded that using § 204.00 of the

2  Medical-Vocational Guidelines as a framework, a finding of "not

3  disabled" was appropriate. (A.R. 26.)

4      Nonexertional impairments may or may not significantly

5  narrow the range of work a person can do. Soc. Sec. Ruling 83-14

6  at 2, 3. Plaintiff's limitations were to performing SRT without

7  exposure to pulmonary irritants.

8      The occupational base of unskilled occupations that

9  underlies the grids includes administrative notice of

10 approximately 2,500 medium, light, and sedentary occupations;

11 1,600 light and sedentary occupations; and 200 sedentary

12 occupations. Each occupation represents numerous jobs in the

13 national economy. Soc. Sec. Ruling 83-10 at p. 6.

14     Unskilled work is work which needs little or no judgment to

15 do simple duties that can be learned on the job in a short period

16 of time. Id. The basic mental demands of unskilled work include

17 the abilities to understand, carry out, and remember simple

18 instructions. Soc. Sec. Ruling 85-15 at 4. Unskilled jobs at all

19 levels of exertion generally involve dealing primarily with

20 objects, rather than with data or people, and they generally

21 provide substantial vocational opportunity for a person with

22 solely mental impairments who retains the capacity to meet the

23 intellectual and emotional demands of unskilled work. Id.

24     Therefore, Plaintiff's nonexertional limitation to work

25 involving SRT would not require resort to a VE to determine the

26 effect of the limitation on the occupational base.

27     However, the ALJ in the decision presently under review

28 limited Plaintiff to SRT at all exertional levels but "no

20

exposure" to pulmonary irritants. (A.R. 24.) This limitation was different from that in the previous decision of November 18, 2003, in which the ALJ concluded that Plaintiff had the RFC to understand, remember, and carry out simple one- and two-step instructions and must avoid "concentrated exposure to dusts, fumes, and gases." (Emphasis added.) (A.R. 599.)

Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc. Soc. Sec. Ruling 85-15 p. 7. Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions. Id. Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VE. Id.

Here, the limitation of "no exposure to pulmonary irritants" removes the case from the category involving only minimal impact on the range of work. The ALJ did not obtain the testimony of a vocational expert or otherwise identify any substantial evidence in the record to support the conclusion that a limitation of no pulmonary irritants did not affect the broad world of work.

With respect to the remedy to be employed in this case, a district court is authorized to affirm, modify, or reverse a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The

21

1  decision whether to remand a matter pursuant to sentence four of

2  § 405(g) or to order immediate payment of benefits is within the

3  discretion of the district court. Harman v. Apfel, 211 F.3d 1172,

4  1178 (9th Cir. 2000). When a court reverses an administrative

5  agency determination, the proper course, except in rare

6  circumstances, is to remand to the agency for additional

7  investigation or explanation. Moisa v. Barnhart, 367 F.3d 882,

8  886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16

9  (2002)). Generally, an award of benefits is directed where no

10 useful purpose would be served by further administrative

11 proceedings, or where the record has been thoroughly developed.

12 Varney v. Secretary of Health and Human Services, 859 F.2d 1396,

13 1399 (9th Cir. 1988).

14      Here, the ALJ must consider additional evidence in order to

15 determine to what extent Plaintiff's nonexertional limitations

16 affect the range of work she may perform. Accordingly, the matter

17 should be remanded for further consideration.

18      VI. Recommendation

19      Based on the foregoing, the Court concludes that the ALJ's

20 decision was not supported by substantial evidence in the record

21 as a whole and was not based on proper legal standards.

22      Accordingly, it IS RECOMMENDED that

23      1. Plaintiff's social security complaint BE GRANTED IN PART,

24 and

25      2. The matter BE REMANDED pursuant to sentence four of 42

26 U.S.C. § 405(g) for further consideration, consistent with this

27 decision, of Plaintiff's status as disabled, including whether or

28 not on the basis of the Plaintiff's age, education, work

1 experience, and residual functional capacity, Plaintiff could
2 perform any work existing in significant numbers within the
3 economy, and further including examination of a vocational expert
4 and preparation of a decision containing all required findings;
5 and

6     3. Judgment BE ENTERED for Plaintiff Pang Yang and against
7 Defendant Michael J. Astrue.

8     This report and recommendation is submitted to the United
9 States District Court Judge assigned to the case, pursuant to the
10 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the
11 Local Rules of Practice for the United States District Court,
12 Eastern District of California. Within thirty (30) days after
13 being served with a copy, any party may file written objections
14 with the court and serve a copy on all parties. Such a document
15 should be captioned "Objections to Magistrate Judge's Findings
16 and Recommendations." Replies to the objections shall be served
17 and filed within ten (10) court days (plus three days if served
18 by mail) after service of the objections. The Court will then
19 review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
20 (b)(1)(C). The parties are advised that failure to file
21 objections within the specified time may waive the right to
22 appeal the District Court's order. Martinez v. Ylst, 951 F.2d
23 1153 (9th Cir. 1991).

24 IT IS SO ORDERED.

25 **Dated:**   October 23, 2008       **/s/ Sandra M. Snyder**
                      UNITED STATES MAGISTRATE JUDGE